## Forbes Estate

*Edward S. Young,* for executor.
*James Coyne,* for exceptants.

ROWLEY, *J.,* February 27, 1980—In paragraph "Third" of her last will and testament dated July 1, 1974, testatrix specifically devised her residence at 213 Chippewa Park Road, Chippewa Township, Beaver County, to Louis LeRoy Dunn for his lifetime and the remainder interest to Patricia L. Heim. So far as the record shows that was the only

real estate owned by her from then until the date of her death.

On September 21, 1978 the testatrix entered into a written agreement to sell her home to Richard L. and Janice Ferri-Reed for a consideration of $58,000. One Thousand Dollars hand money was paid and the balance was to be paid on or before November 30, 1978.

On November 2, 1978, before the sale of the real estate was closed, testatrix died. On November 22, 1978 her will was probated and letters testamentary on her estate were granted. Subsequently, the executor completed the sale of the real estate and received the net balance of the proceeds in the amount of $53,342.07.

On October 11, 1979 the executor filed his first and final account, together with a statement of proposed distribution. He proposed that the balance for distribution ($39,954.13) be distributed among the remaindermen as set forth in paragraph "Fourth" of testatrix's will. Exceptions to the account and proposed distribution were filed by Patricia L. Heim and Louis LeRoy Dunn. Exceptants claim that the net proceeds of the sale of the real estate should be distributed to them under paragraph "Third" of testatrix's will.

On February 12, 1980 the account came before the court for audit. The matter was submitted on the record together with the stipulation that in the event the exceptions are sustained the value of the share of the life tenant "is the amount that is presently available for distribution times the decimal of .23934." Counsel for each of the exceptants, as well as counsel for the executor, have filed briefs with the court. The matter is now before us for decision.

All the parties agree that the devise contained in paragraph "Third" of testatrix's will is a specific

devise. The executor argues that the execution of the agreement on September 21, 1978 by the testatrix to sell her real estate constituted an equitable conversion and that the specific devise of the subject matter of the agreement is thereby adeemed. The exceptants argue, however, that the devise contained in paragraph "Third" is saved from ademption by section 2514(18)(i) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, as amended, 20 Pa.C.S.A. §2514(18)(i), which provides, in part, that "[a] devisee . . . of property specifically devised . . . has the right to . . . any balance of the purchase price . . . owing from a purchaser to the testator at his death by reason of a sale . . . of the property by the testator." The executor counters with the argument that section 2514(18)(i) is not applicable to the present case. The argument is, as we understand it, that at the time of testatrix's death "no sale had taken place and no funds were due to her." The executor, in his written brief, goes on to argue that section 2514(18)(i) "has reference to a situation where a testator has consummated a sale and is owed consideration at the time of his death. It does not have application to a situation where the sale is pending and is consummated after death by a personal representative, since, under the agreement in question, no moneys were due to the testatrix at the time of her death." We have concluded that the exceptions must be sustained.

The law of ademption has been variously characterized as inflexible and harsh. It has been argued that courts have reached questionable results in an attempt to avoid the consequences of an application of the rule. For a discussion of some of the claimed inequities see Fiduciary Review, September, 1964, at 1, and Ademption in Pennsylva-

nia, 69 Dick. L. Rev. 95 (1964). Also see Fiduciary Review, September, 1972, at 1, and Sum. Pa. Jur., Intestacy and Wills §§391-403.

In 1965 the Pennsylvania General Assembly added section 14(17) to the 1947 Wills Act by the Act of December 22, 1965, P.L. 1194, 20 P.S. §180.14(17), to provide relief from ademption in certain situations involving the estate of an adjudged incompetent. That provision was incorporated in the 1972 Probate, Estates and Fiduciaries Code as section 2514(16). For a discussion of the new code see Fiduciary Review, August, 1972, at 1.

In 1976 the legislature in the Act of July 9, 1976, P.L. 551, passed numerous omnibus amendments to the P.E.F. Code. Many of them were derived from similar provisions contained in the Uniform Probate Code. Among the changes were significant amendments relating to the matter of ademption. Section 2514(16) was repealed. It was replaced by three subsections designated as sections 2514(16.1), 2514(17), and 2514(18). These amendments expand the number of situations in which specific gifts of property by a testator are saved from ademption. Subparagraph (16.1) deals with the matter of incompetency and increases the circumstances under which ademption is determined not to occur. A further change is contained in subparagraph (17), dealing with changes in securities, and details those circumstances under which ademption does not occur. Finally, subparagraph (18), the one on which exceptants in this case rely, deals with the balance due to a testator from a change in the property devised or bequeathed. An illuminating discussion of these changes is to be found in Fiduciary Review, December, 1976, at 1. Referring to these three subsections in particular, the author states:

"Act 135 incorporates provisions of the Uniform Probate Code in PEF 2514, in a manner which should make it easier in some instances for our courts to avoid much of the harshness of an inflexible application of ademption rules and to more nearly carry out the probable wishes of testators who have not expressed a 'contrary intent' in their wills. In this respect it is a step toward the concept of ademption as it was derived from the Roman Law, where it was characterized as 'a taking away' by the testator."

More specifically referring to subparagraph 18 the author states: "It should do much to salvage the presumed intention of the testator in circumstances where the doctrine of ademption under case law has been unduly harsh." The authors go on to discuss the consequences of Act 135 and state: "Existing case law will remain significant in the determination of whether a legacy is general, specific or demonstrative [citing authorities], but the distinction will not be encumbered with as many dire consequences, inconsistent with the probable intent of the testator, as heretofore.

". . .

"PEF 2514(18) will change the results in limited instances where the change in form of the asset may or may not have been occasioned by act of the testator, and that which has been received in exchange is identifiable. As heretofore, an act of the personal representative after testator's death, whether intentional or unintentional, will not work an ademption."

The authors go on to discuss several instances in which the amendment will change or clarify existing case law. One of those situations discussed is that presented to us in this case. That is, "the de-

visee of real estate will be entitled to the purchase money" that has not been paid. The authors state in conclusion that the courts may look to the legislation "as evidence of the legislative intent to abandon the inflexible rule of ademption in favor of an attempt to find the probable intention of a testator in circumstances unanticipated by him when the will was written and not reconsidered by him after the occurrence of the unanticipated event."

In the case before us the change in testatrix's real estate was occasioned by her own act. However, the balance of the purchase price, in the amount of $53,342.07 is easily identifiable and may be related unquestionably to the real estate. There is nothing to indicate in the will that testatrix anticipated the possibility of a sale of the property by herself at the time she executed it. Moreover, in view of the fact that her death occurred approximately twelve days after the execution of the agreement of sale, it is unlikely that the matter was reconsidered by her after signing the contract of sale and before her death. Thus, in view of the historical development of the rules of ademption and the suggested legislative intention, as well as the plain language of the statute itself, we have reached the conclusion that section 2514(18) effected a change in the law as it existed previously (Roos Estate, 15 Fiduc. Rep. 497 (1965)), and that the exceptions must be sustained.

For these reasons we make the following

## DECREE

Now, February 27, 1980, the account in the above entitled estate having been filed and confirmed nisi and examined and audited by the court, upon consideration thereof it is ordered, adjudged and decreed that the account be confirmed absolutely;

that the exceptions filed by Louis L. Dunn and Patricia L. Heim to the statement of proposed distribution are sustained; and that the assets in the hands of the accountant, to wit: $39,954.13, be paid and distributed as follows, unless exceptions are filed within ten days.

To: Louis L. Dunn ............ $ 9,561.64
Patricia L. Heim .......... $30,392.49
Total ................ $39,954.13